UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES, ex rel. )<br>LOKOMIS STEPHENSON, )<br>)<br>Petitioner, )<br>v. )<br>)<br>DONALD GAETZ, Acting Warden, )<br>Menard Correctional Center, )<br>)<br>Respondent. ) | Case No. 09 C 1953<br><br>Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon the Petition of Lokomis Stephenson ("Petitioner") for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 [1] (1996). For the reasons stated below, the petition for a writ of *habeas corpus* is denied.

## BACKGROUND

Petitioner and his co-conspirators were charged with the murder of Thomas Walker on December 30, 1999. (Resp. Ex. K, 1.) Following a bench trial, Cook County Circuit Court Judge James D. Egan convicted Petitioner of first-degree murder and home invasion. (Resp. Ex. K, 3.) Judge Egan sentenced Petitioner to concurrent, respective terms of forty and twenty years imprisonment. (Resp. Ex. K, 3.) Petitioner is presently incarcerated at the Menard Correctional Center in Menard, IL. (Doc. 1, 7.)

Thomas Walker lived on the second floor of a house that he shared with his mother, Neoma Walker, and his sixty-year-old cousin, Carl Freeman. (Resp. Ex. K, 1-2.) Neoma testified that on the afternoon of the murder, Thomas was sleeping upstairs while she and Freeman were on the first floor. (Resp. Ex. K, 1-2.) The doorbell rang, and Neoma found

1

Petitioner and two other men at her door claiming to be delivering balloons for Thomas's girlfriend. (Resp. Ex. C, 2.) The men then forced their way into the house. (Resp. Ex. C, 2.) All three intruders were armed. (Resp. Ex. K, 1-2.) While the other two intruders went upstairs, Petitioner held Neoma and Freeman hostage at gunpoint. (Resp. Ex. K, 1-2.) Petitioner tied Neoma with duct tape and repeatedly struck her with his gun. (Resp. Ex. K, 2.) One of the other intruders came downstairs and forced Freeman upstairs. (Resp. Ex. K, 2.) Neoma then heard several gunshots, after which Petitioner went upstairs. (Resp. Ex. K, 2.) After Petitioner went upstairs, Neoma heard another gunshot. (Resp. Ex. K, 2.) After the three intruders fled the house, Neoma found Thomas, lying in a pool of blood. (Resp. Ex. K, 2.) Thomas Walker later died at the hospital from multiple gunshot wounds. (Resp. Ex. K, 2.)

Carl Freeman also testified at the bench trial. (Resp. Ex. K, 1.) Freeman is mentally and physically disabled. (Resp. Ex. K, 1.) Freeman's testimony corroborated parts of Neoma's testimony. (Resp. Ex. K, 2.) Specifically, Freeman testified that he lived in the same house with Neoma and Thomas, that all the intruders had guns, that one intruder took Freeman upstairs while another intruder stayed downstairs with Neoma, and that Freeman found Neoma wrapped in duct tape after the intruders left. (Resp. Ex. K, 2.) Additionally, Freeman testified that he saw the intruders shoot Thomas Walker. (Resp. Ex. K, 2.) However, Freeman could not identify Petitioner as one of the intruders at trial. (Resp. Ex. K, 2.) When the prosecutor asked Freeman why Freeman had previously identified one of the men in a photo of the lineup, Freeman only responded, "[h]e said, 'Put my finger on the one in the bullpen.'" (Resp. Ex. K, 2.)

After Freeman testified, Petitioner's trial attorney moved to strike Freeman's testimony on the grounds that it was incoherent, confusing, and misleading. (Resp. Ex. K, 3.) Petitioner's attorney further argued that Freeman was incompetent to testify, did not understand the nature of the trial proceedings, and may not have understood where he was. (Resp. Ex. K, 3.) However, the trial court denied the motion to strike Freeman's testimony, noting that the court "would consider the testimony 'for what it is worth.'" (Resp. Ex. K, 3.)

Because Freeman could not identify any of the offenders, the trial court judge acknowledged that only one witness could identify Petitioner as one of the offenders. (Resp. Ex. O, 415-16.) However, the judge noted that Freeman's testimony corroborated portions of Neoma's testimony. (Resp. Ex. O, 414.) Neoma Walker described the day of the incident as sunny and stated that the first floor of her house was bright and clear from the daylight. (Resp. Ex. O, 416.) Neoma also stated that Petitioner was a short distance from her during the 15-to-20-minute period when Petitioner bound Neoma with duct tape and repeatedly struck her with his gun. (Resp. Ex. O, 416.) Importantly, the trial court judge found that Neoma had "a very good degree of attention at the time of the offense." (Resp. Ex. O, 417.)

Neoma initially described the offender who bound and struck her to police as between five-foot-seven and five-foot-nine inches tall, between 140 and 150 pounds, and dark-complexed. (Resp. Ex. O, 417.) The trial judge found that Petitioner was between light-skinned and dark-skinned, somewhere around six feet tall, and slender. (Resp. Ex. O, 417-18.)

Neoma identified Petitioner in photographs of a lineup, "certain that that was [her assailant] and got very emotional . . . ." (Resp. Ex. O, 418.) The judge also held that the photo array was "very fair." (Resp. Ex. O, 418.) Although the photo array occurred two weeks after the incident, the judge found that Neoma's identification was credible. (Resp. Ex. O, 419.) In

reviewing the evidence, the judge focused almost entirely on Neoma's identification of Petitioner, barely noting Freeman's testimony. (Resp. Ex. O, 415-18.) Consequently, the judge found Petitioner guilty of first-degree murder and home invasion and sentenced him to concurrent, respective terms of forty and twenty years. (Resp. Ex. K, 3.)

*Direct Appeal*

Petitioner's attorney subsequently filed a motion to withdraw as counsel because there were no meritorious issues. (Resp. Ex. A, 11.) Petitioner filed a *pro se* response, alleging that the State did not prove him guilty beyond a reasonable doubt and that his sentence was excessive. (*See* Resp. Ex. B.) The First Judicial District Appellate Court of Illinois affirmed Petitioner's conviction. (Resp. Ex. C, 4.) The court stated that a single witness's positive identification is "sufficient to sustain a conviction despite testimony to the contrary, provided the witness is credible and observed defendant under circumstances that would permit a positive identification to be made." (Resp. Ex. C, 3.) Although Walker's description of Petitioner was inexact, the appellate court found that the discrepancies were "insufficient to discredit the positive identification made [of the Petitioner] after observing [Petitioner] at close range for 20 minutes." (Resp. Ex. C, 2.) Moreover, the court noted that inaccurate descriptions of an assailant's height and weight are not dispositive. (Resp. Ex. C, 3.) The appellate court also rejected Petitioner's sentencing claim. (Resp. Ex. C, 3-4.)

On July 26, 2005, Petitioner filed a petition for leave to appeal ("PLA"). (Resp. Ex. D, 1.) On December 1, 2005, the Supreme Court of Illinois denied the PLA. (Resp. Ex. E, 1.) Petitioner did not petition the United States Supreme Court for a writ of *certiorari*. (Doc. 1, 2 ¶ 5.)

*Post-Conviction Proceedings*

On April 17, 2006, Petitioner filed a *pro se* post-conviction petition pursuant to Illinois's Post-Conviction Hearing Act, 725 ILCS 5/122-1 (2004) *et seq.*, in which Petitioner asserted the following four claims: (1) trial counsel was ineffective for failing to suppress a lineup and a courtroom identification; (2) trial counsel was ineffective for failing to ask the court to hold a hearing to determine if Carl Freeman was competent to testify; (3) the prosecution's arguments included facts not admitted as evidence; and (4) appellate counsel was ineffective for not raising the above-mentioned issues on direct appeal. (Resp. Ex. F, 1, 3.) On July 28, 2006, the circuit court summarily dismissed the post-conviction petition as "frivolous and patently without merit." (Resp. Ex. G, 5.) Additionally, the court noted that Freeman was competent to testify. (Resp. Ex. G, 4.) Thus, Petitioner was unable to show that he was prejudiced by his attorney's failure to request a competency hearing. (Resp. Ex. G, 4.)

Petitioner appealed this ruling to the state appellate court, arguing that the circuit court erred because his post-conviction petition raised the gist of meritorious constitutional claims and were not patently frivolous and without merit. (Resp. Ex. H, 11.) Specifically, Petitioner argued that both his trial and appellate counsel were ineffective for failing to request a hearing on whether Freeman was competent to testify. (Resp. Ex. K, 5-6.) Although this was the first time Petitioner raised this issue, the state appellate court addressed the claim's merits because Petitioner's claim included prejudice, resulting from ineffective appellate counsel. (Resp. Ex. K, 5-6.)

The state appellate court held that Petitioner "suffered no prejudice as a result of his attorneys' failures to request a competency hearing for Freeman." (Resp. Ex. K, 7.) Moreover, the court held that considering Freeman's testimony "for what it is worth" was appropriate. (Resp. Ex. K, 7.) Additionally, the court held that Neoma Walker had "an excellent opportunity to view [Petitioner] at close proximity in a brightly lit room, and she had a high degree of attention" and "was certain in her identification of [Petitioner]." (Resp. Ex. K, 7.) Further, Freeman's testimony was used, "at most, to corroborate [Neoma's] testimony." (Resp. Ex. K, 8.) Consequently, the court concluded that the result of the trial would most likely not "have been different had Freeman's testimony been excluded after a competency hearing." (Resp. Ex. K, 8.) Because Petitioner could not show prejudice from ineffective trial counsel, his claim of prejudice from ineffective appellate counsel also failed. (Resp. Ex. K, 8.)

Petitioner then filed a PLA with the state supreme court, asserting that both his trial and appellate counsel were ineffective for failing to request a hearing on whether Freeman was competent to testify. (Resp. Ex. L, 4.) However, on September 24, 2008, the Illinois Supreme Court denied this PLA. (Resp. Ex. M, 1.)

On March 30, 2009, Petitioner filed the instant petition for federal *habeas corpus* relief pursuant to 28 U.S.C. § 2254. (Doc. 1, 1.) On May 27, 2009, Petitioner amended his petition by letter and replaced one of his claims for relief. (Doc. 11, 3.) As such, Petitioner has raised the following grounds: (1) the State failed to prove Petitioner guilty beyond a reasonable doubt; (2) trial and appellate counsel were ineffective for failing to challenge Freeman's competency to testify at trial; and (3) trial counsel was ineffective for failing to file a pre-trial motion for a competency hearing for Freeman. (Doc. 1, 5; Doc. 11, 3.)

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act (AEDPA) controls this Court's authority to grant *habeas corpus* relief. *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 1939, (2007). The AEDPA requires federal *habeas* courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with "clear and convincing evidence." *Schriro*, 550 U.S. at 473-74. A federal court will not grant *habeas corpus* relief on any claim adjudicated on the merits by a state court unless: (1) the state court applied federal law, as determined by the United States Supreme Court, unreasonably to the facts of the case; or (2) the state court's decision relied on an unreasonable reading of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). This "unreasonable" standard is a high standard to meet; "unreasonable" means "lying well outside the boundaries of permissible differences of opinion." *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003). That is, *habeas* relief should not be granted if the state-court decision can be said to be one of several equally plausible outcomes. *See id.* at 662.

Attacks on the sufficiency of the evidence in *habeas corpus* petitions are governed by the standard announced in *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791-92 (S.Ct.., 2006) ("*Virginia*"). The *Virginia* Court held that a petitioner is entitled to *habeas corpus* relief if it is found that upon the record evidence adduced at the trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. (*Id.*) In making this determination, the court must view the evidence in the light most favorable to the conviction. *See Adams v. Bertrand*, 453 F.3d 428, 433 (7th Cir. 2006) ("*Adams*").

Ineffective-assistance-of-counsel claims are governed by the standard announced in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984) ("*Strickland*"). Moreover, when a petitioner alleges ineffective assistance of counsel in a *habeas* petition and the state court has previously analyzed the issue, the petitioner must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance; under § 2254(d)(1), it is not enough to convince a federal *habeas* court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, petitioner must show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner. *Bell v. Cone*, 535 U.S. 685, 698-99, 122 S.Ct. 1843, 1852 (2002) ("*Bell*"). Additionally, ineffective-assistance-of-appellate-counsel claims are similarly governed by the *Strickland* framework and the Court's holding in *Bell*. *See Malinowski v. Smith*, 509 F.3d 328, 339 (7th Cir., 2007) (citing *Winters v. Miller*, 274 F.3d 1161, 1168 (7th Cir., 2001)).

## ANALYSIS

Petitioner raises three grounds for *habeas corpus* relief in his petition. In claim I, Petitioner argues that the State had insufficient evidence to convict him. (Doc. 1, 5.) Claims II and III allege that both trial and appellate counsel were ineffective for failing to argue that Freeman was not competent to testify at trial. (Doc. 1, 5; Doc. 11, 3.) However, the state appellate court correctly found that Petitioner was proven guilty beyond a reasonable doubt consistent with the standard set forth in *Virginia*, 443 U.S. at 318-19. Moreover, Petitioner cannot show that the failure to challenge Freeman's competency prejudiced his defense. Petitioner's petition is denied for the reasons set out below.

*The State Proved Petitioner Guilty Beyond a Reasonable Doubt*

The State proved Petitioner guilty of first-degree murder and home invasion beyond a reasonable doubt. The critical inquiry on a review of the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Id.*) As stated above, the trial court, sitting as the trier of fact, found that the prosecution had carried its burden of proving all essential elements of the crime beyond a reasonable doubt. Although the state appellate court did not cite directly to *Virginia*, the court used the *Virginia* standard and held that the evidence was sufficient and affirmed Petitioner's conviction. This Court cannot disturb the appellate court's ruling on the sufficiency claim unless the appellate court's application of the *Virginia* standard was unreasonable. 28 U.S.C. § 2254(d); *Adams*, 453 F.3d at 432. Importantly, many state courts have held that the testimony of a single eyewitness is sufficient to convict under the *Virginia* standard. *See, e.g., Swann v. State*, 806 So.2d 1111, 1118 (Miss. 2002) (holding that the testimony of a single eyewitness is sufficient to convict even though there may be more than one eyewitness testifying to the contrary); *Green v. State*, 756 N.E.2d 496, 497-98 (Ind. 2001) (holding that "[t]he testimony of a single eyewitness to a crime is sufficient to sustain a murder conviction"); *State v. Bright*, 776 So.2d 1134, 1148 (La. 2000) (holding that the testimony of a single eyewitness is sufficient to support a guilty verdict). Additionally, the Seventh Circuit has held the same way. *See, e.g., Kines v. Godinez*, 7 F.3d 674, 678 (7th Cir. 1993) (holding that a single eyewitness is sufficient to prove guilt beyond a reasonable doubt).

Here, Neoma Walker identified Petitioner as one of the three men who participated in the home invasion and murder of Thomas Walker. Although Neoma was the only witness who could identify Petitioner as one of the offenders, no other witness excluded Petitioner as the offender. Neoma stated that Petitioner was a short distance from her for a period of fifteen to twenty minutes. The trial court judge found that Neoma had "a very good degree of attention at the time of the offense." (Resp. Ex. O, 417.) Although Neoma's initial description of Petitioner included incorrect estimations of Petitioner's height, weight, and skin-tone, Neoma identified Petitioner from photographs of a lineup, "certain that [Petitioner] was [her assailant] . . . ." (Resp. Ex. O, 418.) The judge also held that the photo array was "very fair." (Resp. Ex. O, 418.) Moreover, although the photo array occurred two weeks after the incident, the trial court judge found that Neoma's identification was credible.

The state appellate court noted that Neoma made her positive identification "after observing [Petitioner] at close range for 20 minutes." (Resp. Ex. C, 2.) Further, as mentioned above, the state appellate court held that the testimony of a single eyewitness is sufficient to convict. (Resp. Ex. C, 2.) Thus, the state appellate court's decision was not an unreasonable application of the *Virginia* standard. 28 U.S.C. § 2254(d). Therefore, the State showed that any rational trier of fact would have found Petitioner guilty beyond a reasonable doubt.

*Counsel's Failure to Challenge Freeman's Competency Did Not Prejudice Petitioner's Defense*

Petitioner's trial and appellate counsel were not ineffective for failing to argue that Freeman was incompetent to testify; and trial counsel was not ineffective for failing to file a pre-trial motion, challenging Freeman's competency. In *Strickland*, 466 U.S. at 687, the Supreme Court set forth the two elements necessary to substantiate an ineffective-assistance claim. First, Petitioner must show that counsel's performance fell below an objective standard of

reasonableness. (*Id.*) Second, Petitioner must show the deficient performance prejudiced his defense. (*Id.*) The failure to satisfy either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel. *People v. Enis*, 194 Ill.2d 361, 377 (Ill. 2000) (citing *Strickland*, 466 U.S. at 697.)) The state appellate court did not address the performance element. However, because Petitioner's counsels' failures to challenge Freeman's competency did not prejudice Petitioner's defense, both of Petitioner's ineffective-assistance claims fail.

To demonstrate that an attorney's deficient performance prejudiced a defense, a petitioner must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Moreover, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Id.*) Thus, for Petitioner to show prejudice to his defense, Petitioner would need to show that Freeman's testimony would undermine confidence in the result of his verdict and that Freeman was incompetent. Here, Petitioner has shown neither.

After Freeman testified, Petitioner's trial counsel moved to strike his testimony on the grounds that it was incoherent, confusing, and misleading. Counsel further contended that Freeman was incompetent to testify, did not understand the trial proceedings, and may not have understood where he was. However, the trial court denied the motion to strike Freeman's testimony, noting that the court "would consider the testimony 'for what it is worth.'" (Resp. Ex. K, 3.) Significantly, the trial court focused almost entirely on Neoma's identification of Petitioner in discussing the evidence presented. Freeman's testimony was only mentioned briefly as corroborating parts of Neoma's story. Therefore, Petitioner has not shown that Freeman's testimony undermined confidence in the result of his verdict.

11

Moreover, Petitioner cannot demonstrate that Freeman would have been found incompetent. Importantly, "difficult to comprehend" testimony does not demonstrate that a witness lacks the ability to express him or herself or to understand trial proceedings. *People v. Avila*, 133 P.3d 1076, 1144 (Cal. 2006). Here, Petitioner supports his proposition that Freeman would have been found incompetent by citing Freeman's strange answer to the question of why Freeman had previously identified one of the men in a photo of the lineup during his testimony and the undisputed fact that Freeman was mentally and physically disabled. (*See* Doc. 1; Doc. 11.) However, the trial judge who observed the demeanor of Freeman and heard his testimony held that Freeman was competent to testify, and Petitioner has shown no significant evidence that suggests that the state court was unreasonable in holding that Freeman was competent.

In sum, Petitioner was proven guilty beyond a reasonable doubt under the *Virginia* standard. Moreover, Petitioner has not shown that he received ineffective assistance of his trial or appellate counsel under the *Strickland* criteria.

## CONCLUSION

For the reasons stated above, all of Petitioner's asserted grounds are insufficient to support a writ of *habeas corpus*. Accordingly, the Petition for a Writ is denied.

Date: October 16, 2009

JOHN W. DARRAH
United States District Court Judge